Gibson, Lee & Co. *v.* Carlin.

## GIBSON, LEE & CO. *v.* D. B. CARLIN.

1. PLEADING AND PRACTICE. *Suit for failure to perform contract. What may be recovered.* It is the settled law of this State, confirmed by a declatory statute, that a plaintiff, who has not performed his contract, may nevertheless recover compensation for the partial performance equal to, and limited by the value of the benefit conferred, the defendant, by the very statement of the principle, being entitled to abate the recovery by the damages sustained, these damages extending to such as might be recovered by a cross-action.

2. SAME. *Same. Same. Recoupment.* The defense of recoupment in such cases, which would be good at law without a cross-action, would be equally good in equity without a cross-bill.

3. SAME. *Same. Measure of damages.* The measure of damages in such cases is usually the difference between the contract price and the value of the work as done, or the cost of replacing the work so as to make it equal to the work contracted for, to which may be added the actual damages from any injury, the proximate result of the breach of contract, occurring before the accrual of the defendant's right of action for the breach, or within the reasonable time thereafter required to replace the defective work.

4. SAME. *Same. Same. Recoupment.* A mechanic, who undertakes to put on a new tin roof on a building, and fails to perform his contract, is liable to have the contract price recouped by deduction for the defective work, and the actual injury to the building from rain water penetrating such roof by reason of the defective work.

5. SAME. *Same. Same.* Although a contract stipulate for the completion of work by a specified time, yet if both parties consent to an extension of the time, the liability of the mechanic for injury occasioned by defects in the work will continue during such extension, and until the expiration of a reasonable time thereafter within which to rectify the defects.

### FROM HAMILTON.

Appeal from the Chancery Court at Chattanooga. W. M. BRADFORD, Ch.

J. A. CALDWELL for complainants.

ELDER & WHITE for defendant.

COOPER, J., delivered the opinion of the court.

Bill to enforce the mechanic's lien upon the following writing:

"CHATTANOOGA, TENN., December 29, 1881.

Mr. D. B. Carlin, City. Dear Sir—We will furnish the material, and put on good tin and give it two coats of mineral paint and boiled oil, and put on your roof on your building on Ninth street, 40x44, for one hundred and thitty-three dollars. This will include taking off the tar roof.

Very respectfully, GIBSON, LEE & Co.

The above contract is accepted, Dec. 29, 1881. D. B. CARLIN.

And work to be done in ten or twelve days from date."

In addition to the amount specified in the writing, the complainants claim $13.35 for extra work in capping the side or fire walls of the building. The defendant in his answer contends that the writing produced does not contain the entire contract, and that the capping of the walls, for which extra compensation is claimed, was included in the contract. He further insists that the contract has never been complied with—the work being so negligently and badly done that the roof has always leaked, and still continues to leak when it rains, to the great damage of the building. He claims a deduction from the contract price by way of recoupment. The chancellor granted the complainants all the relief sought without deduction. The Referees, upon Carlin's appeal, have sustained his defenses. The complainants except to their report.

The new roof was put on within the ten or twelve days' limitation of the written contract made an ex-

hibit to the bill, but the complainants' foreman admits that some leaks were found which were not closed for several days, and some leaks it is otherwise clearly shown have never been remedied. The capping of the side parapet or fire walls was not done before February 6th, and perhaps later. The foreman of complainants testifies that he left their service in May, at which time one coat of paint, and the second coat on half the roof had been put on, the other half of the second coat being finished, he says, sometime afterwards. There was therefore no compliance by the complainants with the contract in point of time.

It clearly appears that the written proposition and acceptance exhibited with the bill do not contain the entire contract of the parties. The complainant, Gibson, who carried on the negotiations and made the contract with the defendant, testifies himself that the defendant, as a part of the contract, agreed to have a brick-mason present when the old roof was taken off to repair and cap the side walls of the building, without which he admits the roof could not be made tight unless the walls were capped with tin. He further testifies that it was a part of the agreement that the contract price was to be paid by the defendant by a cash payment of $25 when the work was completed, and the residue in monthly installments of $25 each for which the defendant was to give his notes with a certain specified person as surety. It is also shown by the proof that the defendant, as his part of the contract, was to furnish new sheeting for the roof and a workman to put it on as it might be

needed when the tin was laid, and that he did furnish the workman and the sheeting, and that the new sheeting was put on as directed by the complainants' workman. A contract partly in writing and partly in parol is an oral contract: *Smith* v. *O'Donnell*, 8 Lea, 468.

The parties differ as to whether the capping of the fire walls was embraced in the contract. The complainant, Gibson, testifies that he and the defendant discussed the matter, and that the agreement reached was that the walls were to be rebuilt to their original height by the defendant, and cemented on top. In another place he says that the defendant had agreed to have a mason present when the old roof was taken off to repair the walls. The defendant denies that any such agreement was made. On the contrary, he testifies that, owing to his frequent and unavoidable absences from the city, he requested the complainants to make him a proposition covering all necessary work on the parapet walls so as to make a good roof. He adds, in support of his assertion, that complainant Gibson had offered to put on a tin roof for $96, if defendant would take off the old roof and do the other work. Gibson admits that he may have made that offer, as plain roofing without painting was then at $6 a square, which would have amounted to the sum mentioned. It elsewhere appears that the cost of taking off the old roof was about $3, and the cost of painting about $16. The defendant insists that the difference between these sums and the contract price is what was agreed upon for the work on the walls.

The inference, as the Referees say, was a fair one. The written proposition of the complainants is that they "will furnish the material, and put on good tin, * * and put on your roof on your building, * * 40x44." The meaning would seem to be that the complainants would "furnish the material," and do the work necessary to make a good roof. And this would be a legitimate construction to put upon the language unless it is otherwise shown that the defendant was to furnish new sheeting and a workman to put it on, and that he complied with this part of the contract. There is nothing, except complainant Gibson's testimony, to show that defendant was to do anything about the parapet walls. And a most significant fact is that while the defendant did, through his son as his agent, he himself being absent from the city, furnish new sheeting and a workman, not a word was said by the complainants' workman to the son about any expected mason. The contract describes the roof as 40x44 feet. The building fronts 40 feet from outside wall to outside wall, and runs back 42 feet. The estimate of the contract covers the walls. And the complainants' principal workman, who was the acting boss of the work, testifies that on the evening of the day the roof was put on, he told the foreman of the complainants that the walls had to be capped, that there was soldering to do, and gutters to be put up, and the foreman replied that he would have it done. The circumstances sustain the defendant's contention, and we concur with the Referees in thinking that the necessary work on the parapet walls was included in the contract.

Gibson, Lee & Co. v. Carlin.

The front parapet wall was run up three feet above the roof, and covered originally with plank. One of the side walls is said by the defendant to have been twelve inches high, and the other six inches for about half its length. The other testimony shows that these side walls were down to the roof in some places; in others two or three inches high, and one and one-half feet in others. When the new roof was put on the tin was run up about three inches on the front parapet, and "flashed" or inserted between the brick. The same process was pursued on the side walls for three or four feet from the front wall. As to the residue of the side walls nothing was done, and the water, whenever it rained, ran down between the tin and these walls. The flashing on the front wall was not properly done. It should, according to the testimony of an impartial tinner, have been pointed with cement. "It is generally expected," adds this witness, "that the tinner will do this, or have it done when it is necessary to be done." But, as we have seen, the contract in this case requires the complainants to do all that was necessary to be done on the parapet walls to make a good roof. By reason of the failure to cement the flashing, the inserted tin drew out, allowing rain water to run down the wall to the sheeting, and drain off at the lowest points, injuring the plaster and paper on the walls, and compelling the tenants to use vessels to catch the flow.

After the complainants had capped the side walls with tin, the roof ceased to leak along these walls, but the leaks continued along the front of the house,

and in some places through the roof. The tin was put on in standing seams, which will leak if flooded. "These seams," says the principal workman who put on the roof, "were not constructed so as to prevent leaking if flooded with water." The principal cause of the leaks in the body of the roof was a sunk place of twenty-four square feet. One witness says three feet by eight feet, and another six feet by four feet, towards the rear of the building near the center. This was occasioned probably by the sinking of a joist, but might easily have been remedied in putting on the new sheeting. The water might also have been prevented running through the seams by flat locking and soldering them. Neither of these courses was pursued. The complainants' principal workman testifies on these points: "I did not have the carpenter to raise the roof, nor did I put on a flat lock seam because I did not think it necessary." The witness adds that it rained the day the roof was put on, and the water stood in this low place to the depth of a quarter of an inch, and was therefore not deep enough to flood the seams. The testimony, however, is that the seams were afterwards frequently flooded.

It is obvious from the foregoing facts that the complainants not only failed to perform their part of the contract in time, but failed to do the work properly. The complainant, Gibson, admits in his deposition that the agreement of his firm was to put on a good roof, and a good roof, all the witnesses concur in saying, would be one that would keep out the rain. The work failed to accomplish this object, and was conse-

quently not according to the contract. But it was also so negligently and badly done that the building of the defendant was actually damaged by the rain water which found its way along the parapet walls and through the roof.

According to the strict principles of the common law it was difficult to sustain an action for compensation in favor of a party who had violated or failed to perform his part of a specific contract. For the existence of the contract was a defense to an action for a *quantum meruit,* and the breach of the contract forbade an action upon it. In equity no difficulty lay in the way of an adjustment of the rights of the parties, and the courts of law soon adapted the rules of equity to its forms. From an early day in this State, and independent of statute, it became the settled law that the plaintiff, who has not performed his contract, may nevertheless recover compensation for the partial performance equal to, and limited by the value of the benefit conferred, the defendant, by the very statement of the principle, being entitled to abate the recovery by the damages sustained: *Irwin* v. *Bell,* 1 Tenn., 485; *Stump* v. *Estill,* Peck, 175; *Porter* v. *Woods,* 3 Hum., 56. The recoupment by the defendant, as his defense was called, was made simply by, or in ascertaining the plaintiff's *quantum meruit,* and might be by plea without cross-action: *Whitaker* v. *Pullen,* 3 Hum., 466; *Overton* v. *Phelan,* 2 Head, 445. Recoupment, as said by Fogg, Special Judge, in *Pettee* v. *Tennessee Manufacturing Company,* 1 Sneed, 381, originally implied a deduction from the plaintiff's demand

arising from payment or some other analogous fact, but has been extended in this class of cases, *ex necessitate*, to meet conflicting equities, to counter claims or such damages as might be recovered in a cross-action for the breach of the contract. The statute, Code section 2918, is merely declaratory of the pre-existing law. A defense in such a case which would be good at law without a cross action, would also be good in equity without a cross-bill, for in both courts, the recoupment would be made simply by, or in ascertaining the plaintiff's *quantum meruit.*

But the defendant is mistaken in supposing that he may do nothing, and yet hold the complainants liable for all damages which may accrue at any time thereafter from the defective work. In this class of cases as in the case of breaches of contract for personal service, the law requires from the injured party, after he has accepted or used the work, active diligence to prevent more damage than is necessary. He can charge the delinquent party for such damages only as, by reasonable effort and expense, he could not prevent: *Walker* v. *Ellis*, 1 Sneed, 515; 2 Greenl. Ev., sec. 261. The measure of damages is ordinarily the difference between the contract price and the value of the work as done for merely inferior work, and for defective work the cost of replacing it so as to make it equal to the work contracted for: *Parker* v. *Steed*, 1 Lea, 206 *Bush* v. *Jones*, 2 Tenn. Ch., 190. To these may be added damages for any injury the proximate result of the breach of contract, and which may fairly be considered to have been in the contemplation of the par-

Gibson, Lee & Co. v. Carlin.

ties, and. which could be recovered in a cross-action: *Pettee* v. *Tennessee Manufacturing Company*, 1 Sneed, 381. Of course, injury to a building from rain would be within the contemplation of the parties, and the proximate result of defective work under a contract the very object of which was to prevent that very injury.

The defendant's own proof shows, by itemized statements of witnesses, that the "flashing" on the front parapet wall could have been properly cemented, and the sunken part of the roof elevated and the open seams soldered for twenty or thirty dollars. It was the duty of the complainants to do this work within the time allowed by the contract, or any additional contract, for the completion of the roof in question. It was the duty of the defendant, at his peril, to rectify the defects within a reasonable time thereafter.

The real difficulty in this case is to fix that time, which not only regulates the deduction for inferior and defective work, but limits the recovery of damages the proximate result of the defects. If both parties had treated the contract as at an end after the expiration of the ten or twelve days stipulated for its completion, the defendant's right of action for a breach of the contract would. then have accrued, and the defendant would only have been allowed a reasonable time thereafter to do the work necessary to prevent further damage to the building. The proof shows that this work might have been done in two or three hours. A few days delay could alone be considered as reasonable.

The parties did not, however, treat the contract as

29—VOL. 13.

at an end after the lapse of the twelve days specified. On the contrary the defendant repeatedly urged the complainants to do the work, and they did work thereafter under the contract. By mutual consent the time was extended. The fire walls were not capped before the sixth of February, and the painting of the roof not finished until after the complainants' foreman, as he testifies, left their employment in May. Under the circumstances, it was for the complainants to show, by notice to the defendant, or some formal act after the painting was completed, such as a demand of payment, that they considered the work done. In the uncertainty in which the proof of the complainants has left this point, we feel justified in fixing the first of June as the end of the reasonable time in which the defendant should have protected his building. Up to this time, the defendant will be allowed to recoup the contract price by proper deductions for the inferior and defective work, and by the damages to the building occasioned by the defective work. The defendant has made no proof of damages limited to this period, and there is proof tending to show that rain water would penetrate his front parapet wall by reason of soft and loose brick therein, and also by reason of a defective wooden cornice on the outside. At what time the wall became pervious to rain does not appear. It must be referred to the master to take proof, and report the deduction for the inferior and defective work, and for any damages accruing on account of the defective work between the removal of the old roof and the first of June thereafter.

The chancellor's decree will be reversed, and a decree rendered here in accordance with the report of the Referees and this opinion. The complainants will pay the costs of this court up to and including the decree rendered, the other costs to await the result of the reference.